IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT WILLIAMS                         :

                                        :

    v.                                  :    Civil Action No. DKC 09-0879

                                        :

STATE OF MARYLAND,[1] et al.            :

                                        :

**MEMORANDUM OPINION**

Presently pending in this prisoner civil rights case are two motions: (1) a motion to dismiss or for summary judgment filed by Defendants (ECF No. 67); and (2) a motion for a preliminary injunction filed by Plaintiff Robert Williams (ECF No. 71). For the reasons that follow, Defendants' motion will be granted in part and denied in part, while Williams' motion will be denied.

**I.    Background**

**A.    Factual Background**

The following facts are undisputed.

Plaintiff Robert Williams is an inmate confined at the North Branch Correctional Institute ("NBCI") in Cumberland,

---

[1]    The State of Maryland is still listed on the docket as a party to this suit. Although the State was originally a defendant, the amended complaint dropped it as a party. The clerk will be instructed to note that the State is no longer a party.

Maryland.  On the morning of December 3, 2008, Defendants Jason Frantz and Cinda Walker, corrections officers at NBCI, were escorting Williams back to his cell.  While waiting for a corridor door to open, an altercation arose among Frantz, Walker, and Williams.  During this altercation, Frantz either placed or pushed Williams' head against the wall or the door to the corridor.  Williams suffered a cut over his eye.

Walker and Frantz then placed - or knocked - Williams on the floor.  Additional corrections officers arrived at the scene to assist.  Frantz told the arriving officers that Williams had tried to spit on him.  As a result, the arriving officers held Williams' head, legs, and arms down and placed a "spit mask" over his head.  Fifteen minutes after the incident, Williams received medical care, including four stitches for a cut above his eye, a prescription for an antibiotic, and some ibuprofen.

Because of the incident, prison officials sanctioned Williams with 200 days of disciplinary segregation on December 9, 2008 and a year of lost visits.  An internal investigation determined that there was no use of excessive force.

Beyond these basic facts, most of the remaining facts are in dispute.

In Williams' view, Frantz launched an unprovoked attack on him.  Williams says he was walking down the hallway with his

hands handcuffed behind his back. Frantz suddenly slammed Williams' head against the wall. Williams fell to the floor nearly unconscious and bleeding from one eye. Walker did not intervene.

According to Williams, the attack did not stop there. Frantz then summoned additional officers and falsely told them that Williams had tried to spit on him. In response, the officers "jumped" on him. The officers aggressively responded despite the fact that he was on the ground and in handcuffs.

In addition to the cut over his eye, Williams states that the attack aggravated prior knee and shoulder injuries. Nevertheless, he purportedly received no follow-up medical care for the eye injury, despite his doctor's recommendation that he get such treatment. In addition, he received no treatment for his knee or shoulder injuries until July 21, 2009, eight months later.[2]

Defendants take a decidedly different view of the incident; they contend that it arose solely from Williams' behavior. They

_____

[2] Williams submitted exhibits containing additional facts and allegations. Many of the statements contained within those exhibits are inadmissible. Williams' statements to an investigator, for instance, are hearsay statements not properly considered on summary judgment. *See Maryland Highways Contractors Ass'n, Inc. v. State of Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991).

say that Williams made a throat clearing sound while standing in the hallway and turned his head toward Frantz to spit. Frantz tried to prevent Williams from spitting on him by "placing" Williams' head against the door; Frantz and Walker then placed Williams on the floor. When the additional four officers arrived, they restrained Williams, took him to a holding cell, put a spit bag on him, and transported him to the medical treatment room. According to Defendants, Williams' medical assessment reported only a cut above his eye, headache, and neck pain. Williams received treatment for those injuries from private health care contractors.

### B. Factual Background

Plaintiff filed an initial complaint *pro se* on March 2, 2009, asserting claims against the State of Maryland, former warden of NBCI John Rowley, Secretary of the Department of Public Safety and Correctional Services Gary Maynard, and the six correctional officers allegedly involved in the December 2008 incident. (ECF No. 1). He later filed a sworn affidavit verifying that complaint. (ECF No. 15). After he filed his complaint, Williams also filed two motions for preliminary injunctions seeking transfer from NBCI (ECF Nos. 3, 30), both of which were denied (ECF No. 21, 35).

Defendants then moved for summary judgment (ECF No. 32), but the motion was mooted when the court appointed counsel for Williams and granted him leave to file an amended complaint (ECF Nos. 43, 62-63).  The amended complaint asserts three claims against all Defendants under 42 U.S.C. § 1983:  excessive force in violation of the Eighth Amendment, denial of medical care in violation of the Eighth Amendment, and a violation of Williams' substantive due process rights based on his 200 days of disciplinary segregation and one year of lost visits.  He seeks a declaration that his constitutional rights were violated, an order prohibiting contact or communication between him and any defendant, an immediate transfer from NBCI, an order that he receive immediate medical treatment, reinstatement of his lost visit time, a reduction of his time in segregation by 200 days, and compensatory and punitive damages against each defendant in the amount of $25,000.

Defendants answered the amended complaint on August 31, 2010.  (ECF No. 65).  Roughly one month later, on September 30, 2010, Defendants filed the present motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 67).  Williams opposed shortly thereafter (ECF No. 69) and no reply was filed.

A few months later, on May 12, 2011, Williams filed his third motion for preliminary injunction, again seeking a

transfer out of NBCI. (ECF No. 71). Defendants opposed on May 31, 2001. (ECF No. 72).

## II.  Summary Judgment

All Defendants have moved to dismiss or, alternatively, for summary judgment. Williams opposes each of these motions. Summary judgment will be granted in favor of all Defendants on all claims, with only one exception: the excessive force claim against Frantz.

### A.  Standard of Review

Defendants style their motion as a motion to dismiss or, in the alternative, as one for summary judgment. Because the parties rely on matters outside the pleadings, the court will construe the motion as one for summary judgment. *See Walker v. True*, 399 F.3d 315, 319 n.2 (4th Cir. 2005). Moreover, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) is untimely where, as here, it is filed after an answer. *See* Fed.R.Civ.P. 12(b) (stating such a motion "must be made before pleading if a responsive pleading is allowed").

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary

judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). A mere scintilla of proof also will not suffice to prevent summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted).

**B.   Analysis**

**1.   Excessive Force**

In the first count of his complaint, Williams asserted that Defendants used excessive force when his head was slammed

7

against the wall and he was assaulted while he lay crumpled on the ground. A claim of excessive force in the prison context is governed by the Eighth Amendment; such a claim involves both objective and subjective elements. *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998). The subjective element asks whether the officer used force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The objective element is satisfied where an officer's actions were harmful enough to offend contemporary standards of decency. *Id.* at 8. In assessing these elements, a court must examine the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

### a.   Frantz

Although Defendants insist that Frantz's behavior was merely a reaction to Williams' threat to spit, Williams has produced evidence that suggests otherwise – particularly in the form of sworn statements in his prior verified complaint. Williams maintains that he did not threaten to spit on Frantz,

but that Frantz instead attacked him without cause while he was handcuffed and calm. By all accounts, he did in fact sustain some injuries. A soundless, often-obscured video of the altercation taken from the NBCI surveillance system does not clearly refute Williams' account. *See Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011). Thus, while the admissible evidence supporting Williams' claim is sparse, it is enough to pass muster on summary judgment. Not "every malevolent touch by a prison guard gives rise to a federal cause of action," *Hudson*, 503 U.S. at 9, but a reasonable factfinder could believe Williams' sworn statement and find that this incident involved an unprovoked attack on a compliant and restrained prisoner amounting to excessive force.

Nevertheless, Defendants suggest Frantz may be entitled to qualified immunity. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether qualified immunity applies, the court must consider two questions, both of which must be answered in the affirmative for Williams to defeat Defendants' motion. *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007). The first question

is whether the facts, taken in the light most favorable to Williams, show that Frantz's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As noted above, they do.

Thus, the court proceeds to the second question: whether the relevant right was "clearly established" at the time of the events at issue.[3] *Id.* The essence of this question is whether officials had "'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). And "although the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998).

---

[3] "The existence of disputed material facts – which must be submitted to a jury – does not alter the 'essentially legal' nature of the question of whether the right at issue was clearly established." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (citations omitted).

The constitutional rights implicated by Frantz's alleged attack were clearly established in December 2008. In fact, one of the Supreme Court's most significant excessive force cases, *Hudson v. McMillian*, involves facts strikingly similar to the present one. There, as alleged here, a prison guard launched an unprovoked attack on a handcuffed inmate while transporting him through the prison. *Hudson*, 503 U.S. at 4. Although the inmate suffered relatively minor injuries, the Supreme Court reversed the United States Court of Appeals for the Fifth Circuit's determination that the prisoner did not have a valid Section 1983 claim for excessive force. *Id.* at 12. Thus, an unprovoked attack on a restrained prisoner violates clearly established law. *See also Campbell v. Smith*, 406 F.App'x 741, 743 (4th Cir. 2010). Summary judgment on Williams' excessive force claim cannot be granted as to Frantz.

### b. Walker

As to Walker, Williams recasts his excessive force claim against her as a failure to protect claim. This claim is nowhere to be found in the complaint. Therefore, it is not properly considered on summary judgment. *See, e.g.*, *Stevenson v. City of Seat Pleasant*, No. RWT 09cv1791, 2011 WL 1899238, at *2 (D.Md. May 19, 2011) (refusing to allow plaintiff to move forward under bystander liability theory, where only excessive

force action was alleged); *Holland v. Morgan*, 6 F.Supp.2d 827, 830 (E.D.Wis. 1998) (distinguishing between claims of excessive force and claims of failure to protect, where officers apparently witnessed another officer slam prisoner against metal door); *see also McKenzie v. Comcast Cable Commc'ns*, 393 F.Supp.2d 362, 373 (D.Md. 2005) (declining to consider claim first discussed in opposition to motion for summary judgment); *accord Quinn v. District of Columbia*, 740 F.Supp.2d 112, 131 (D.D.C. 2010); *Crest A Apartments Ltd. II v. United States*, 52 Fed.Cl. 607, 613 (2002). The claim in its original form (*i.e.*, as an excessive force claim) necessarily fails. Walker did not use excessive force on Williams, as there are no facts establishing that she used force at all. Summary judgment will be granted in favor of Walker as to this claim.

### c. Hoover, Johnson, and Werner

Defendants concede that corrections officers Glenn Hoover, Jeffrey Johnson, and Marvin Metz[4] responded to the scene after Williams was taken to the ground. Williams further alleges that corrections officer Robert Werner responded. The claims against these responding officers must fail.

---

[4]    Metz is not a party to this lawsuit.

First, Williams suggests in his amended complaint that these officers unnecessarily kneed him in the back. He has not provided, however, any colorable evidence that the officers did in fact attack him by kneeing him in the back. In his sworn complaint, Williams suggests that the officers "jumped" on him. (ECF No. 1, at 2). Yet "[t]he videotape quite clearly contradicts the version of the story told by" Williams. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Instead, the surveillance video merely shows officers responding to an altercation, restraining an inmate they were informed had been resistant, and transporting him out of the hallway.

Second, the officers also did not use excessive force in placing a spit mask over Williams' head, putting him in leg shackles, and lifting and carrying him down the hallway by his arms and legs. By all accounts, the responding officers were told that Williams had just threatened to spit. They responded by applying a mask that, at least from the facts presented, did not cause any injury to Williams, did not expose him to the threat of injury, and served the limited purpose of stopping spit. They then attempted to secure a prisoner they were told had been unruly. When Williams became unresponsive, they reacted by lifting him to get him out of the hallway. Thus, even if Frantz misled them, all available evidence suggests that

Hoover, Johnson, and any other responding officer acted on the information available to them "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6; *see also, e.g.*, *Allen v. Hernandez*, No. CV-05-0145-SRB, 2009 WL 737045, at *5 (E.D.Cal. Mar. 19, 2009) (finding corrections officers did not use excessive force in putting knee of his back, "escorting him to the holding cell, 'wrestling' with him, applying a spit mask, holding him down, and applying leg restraints," where efforts were meant to restore discipline).

Even if the actions of the responding officers did amount to a constitutional violation, there was no apparent decision issued by the Supreme Court, the Fourth Circuit, or the Court of Appeals of Maryland before this incident indicating that actions such as these would amount to a constitutional violation. *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) ("[C]ourts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose."). Nor would a reasonable person believe that the actions of the responding officers in these circumstances amount to a violation. Accordingly, the responding officers did not violate a clearly established right. Summary judgment must be granted in their favor.

### d. Thomas, Yoder, and Cross

The complaint also names corrections officers William Thomas, Roman Yoder, and Robert Cross as defendants. While these defendants are listed in the caption of the amended complaint, there are no allegations against them and there is no evidence concerning them. A plaintiff bringing claims under Section 1983 must include allegations and summon evidence against specific individuals; he must also show that the official charged acted personally in the deprivation of his rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Merely including a defendant in the caption is insufficient in any case. *See Roberson v. Alliance Midwest Tubular Prods., Inc.*, No. 99 C 7461, 2004 WL 1102310, at *2 (N.D.Ill. Apr. 28, 2004) (listing cases). Summary judgment will be entered in favor of these defendants as to all claims against them.

### e. Maynard and Rowley

Williams further asserts claims against Secretary Maynard and (former) Warden Rowley. Although the complaint is not entirely clear on the matter, Williams clarifies in his opposition to summary judgment that he premises liability on a theory of supervisory liability.[5] That is an important

---

[5] In the amended complaint, Williams asserts claims against these two defendants only in their official capacities.

15

clarification, as it is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Still, there is no basis for a finding of supervisory liability against these two defendants.

"Proving supervisory liability is a difficult task in § 1983 cases." *Hughes v. Halifax Cnty. Sch. Bd.*, 855 F.2d 183, 186 (4th Cir. 1988). To advance under such a theory, Williams would need to present evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

---

(ECF No. 58 ¶¶ 3-4). "A suit based on supervisory liability is an 'individual capacity suit,' i.e., a suit seeking to hold the defendant personally liable." *Drewry v. Stevenson*, WDQ-09-2340 2010 WL 93268, at *5 n.6 (D.Md. Jan. 6, 2010). Thus, it is not even clear that Williams can bring this claim in this fashion.

Under the first element, a pervasive and unreasonable risk of harm requires evidence that conduct is "widespread, or at least has been used on several different occasions." *Id.* The only evidence provided here suggests this incident was isolated and unique. There is no evidence of other instances wherein Frantz used excessive force, and no suggestion of widespread problems with excessive force throughout the NBCI facility. Therefore, Williams fails to establish the first element. Williams also cannot establish the second element, as "deliberate indifference" requires more than evidence of individual, isolated incidents. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). A supervisor cannot be reasonably expected "to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Shaw*, 13 F.3d at 799. Regardless, the record reflects that Frantz's supervisors took all appropriate actions in this case: they launched an internal investigation into the incident, which ultimately concluded that there was no inappropriate use of force. Nothing more is constitutionally required.

### 2. Denial of Medical Care and Due Process

In addition to his excessive force claim, Williams asserts two more claims against Defendants. First, Williams alleges

that, since the alleged assault, he has not received needed medical care. Second, he argues that Defendants violated his substantive due process rights by imposing certain disciplinary measures on him after the incident. Defendants argue that Williams failed to raise this issue via the prison's grievance process. They are correct. Williams has not exhausted his administrative remedies and these two claims may not proceed.

The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. In particular, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[T]he PLRA's exhaustion requirement is mandatory." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005).

The Supreme Court has broadly construed the scope of the administrative exhaustion provision, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the

18

exhaustion provision plainly extends to Williams' allegations. Because exhaustion is an affirmative defense, Defendants bear the burden of proving the negative, that is, establishing that Williams did not send his claims through all steps of the administrative process.[6] *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Defendants have met their burden. A sworn affidavit from Scott Oakley, Executive Director of the Inmate Grievance Office, lists five grievances filed by Williams as of September 21, 2010. Only one of these grievances concerned anything referenced in the complaint; Williams filed an appeal concerning his complaint "that he was assaulted by three NBCI correctional officers on December 3, 2008." (ECF No. 67-6 ¶ 3(d)). There is no indication that Williams filed a grievance regarding medical

---

[6] In Maryland, a prisoner must first file an Administrative Remedy Procedure request with the warden of the prison in which he is incarcerated. If the warden denies that complaint, the prisoner should appeal to the Commissioner of Correction. If this appeal is denied, the prisoner has thirty additional days to file an appeal with the Inmate Grievance Office. *Chase v. Peay*, 286 F.Supp.2d 523, 529 n.10 (D.Md. 2003); *see also Massey v. Sec'y, Dep't of Pub. Safety & Corr. Servs.*, 389 Md. 496, 503-04 (2005). A prisoner must complete each of these steps to "exhaust" his claim. *Moore*, 517 F.3d at 725.

care.  Nor is there any indication of a complaint regarding the disciplinary measures imposed in December 2009.

Williams nevertheless argues he has exhausted his administrative remedies because the grievance concerning his assault "relates" to (a) the false accusations underlying his due process claim and (b) the injuries underlying his denial of medical care claim.  A mere relationship, however, is not enough.  Maryland regulations provide that each claim for relief must be stated in a separate grievance and must be supported with specific information concerning the relevant incidents (*e.g.*, dates, times, places, and names).  *See* Md. Code Regs. 12.07.01.04.  Oakley's affidavit would indicate that Williams failed to meet any of these specificity requirements with regard to his medical care and due process claims.  And if he did try to bring all three of these claims in the same grievance, such an approach would violate the statute's instruction to separate out each claim into individual grievances.  "[T]he prison's requirements, and not the PLRA," define "[t]he level of detail necessary in a grievance," *Jones v. Bock*, 549 U.S. 199, 218 (2007), and Williams has plainly failed to meet the requirements imposed on Maryland prisoners.

Even putting the Maryland regulations aside, Williams must file – at a minimum - a grievance that gives prison officials a

fair opportunity to address the problems that form the basis of the lawsuit. *Moore*, 517 F.3d at 729. He did not do so here, as the simple fact that Williams allegedly suffered an assault would not alert prison officials to the possibility that he also sustained an untreated injury. Nor would the mere fact that Williams was purportedly involved in an assault indicate to prison officials that he was also the victim of retaliatory lies and discipline. Prison officials are under no obligation to contrive and investigate all possible claims arising from a given incident; if a prisoner has a complaint, he must raise it.[7]

Williams nevertheless suggests that summary judgment is inappropriate because Defendants did not attach copies of his grievances. Defendants are not required to prove their case with a particular type of evidence and Williams cannot escape summary judgment merely by bemoaning the lack of a specific document. Defendants are free to support their factual assertions using any admissible evidence, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c). They have

---

[7]     There is no suggestion that Williams was prevented from availing himself of the grievance process.

done so here by submitting sworn statements. If Williams believed the grievance filings would be useful to his case, he should have attached them. If he no longer has them, he should have submitted an affidavit or declaration pursuant to Federal Rule of Civil Procedure 56(d). Because he did neither, summary judgment must be granted on the medical care and due process claims as to all defendants.

## III. Motion for Preliminary Injunction

Williams also moves for preliminary injunction ordering his transfer out of NBCI. This motion is Williams' third request for such a transfer. Much like the prior two requests, Williams has not established any entitlement to a transfer.

### A. Standard of Review

"A preliminary injunction is an extraordinary remedy." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345 (4th Cir.2009), *vacated on other grounds by* 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010) *and reissued in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010). To obtain a preliminary injunction, a plaintiff must establish four elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 364 (quoting

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).

Williams must make a clear showing of each of the four elements

to obtain relief. *Id.*

**B.  Analysis**

As an initial matter, it would not seem that Williams is

entitled to a transfer, as only Frantz remains as a defendant.

The remedy that Williams seeks would run primarily against the

State of Maryland and the Maryland Department of Public Safety

and Correctional Services (DPSCS).  Given that neither the State

nor DPSCS are present parties to the suit, the court would have

no power to issue a permanent injunction against them should

Williams prevail.  *See Zenith Radio Corp. v. Hazeltine Research,*

*Inc.,* 395 U.S. 100, 112 (1969).[8]  "[P]reliminary relief may never

be granted that addresses matters which in no circumstances can

be dealt with in any final injunction that may be entered."  *In*

*re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir.

2003) (quotation marks and brackets omitted).

---

[8]     The All Writs Act, 28 U.S.C. § 1651(a), permits a
court to enjoin one not a party to a lawsuit in certain
circumstances, but those circumstances are not apparent here.
*See United States v. New York Tel. Co.*, 434 U.S. 159, 174
(1977).

In any event, even if he can seek a preliminary injunction, Williams has not made a clear showing as to any of the four elements of the preliminary injunction standard.

He has not established a likelihood of success on the merits. Although he has produced enough evidence to escape the entry of summary judgment as to one defendant, his evidence is decidedly sparse. In his motion for preliminary injunction, he simply relies on his own unverified amended complaint and a video of the incident that shows very little. Such facts fall far short of a "clear showing" of probable success.

Williams has not established any form of irreparable harm. In a sworn affidavit, Defendants have established that Williams would receive the same medical care no matter which facility houses him. The record further indicates that Williams has received medical care while at NBCI. Williams further alleges that he fears retaliation from corrections officers at NBCI, but such unsubstantiated fears are simply too speculative to amount to irreparable harm. *See Microsoft Corp. Antitrust Litig.*, 333 F.3d at 530 (explaining that irreparable harm cannot be "remote nor speculative, but actual and imminent"); *see also, e.g.*, *Basey v. Mooneyham*, 172 F.App'x 582, 584 (5th Cir. 2006) (denying request for preliminary injunction where prisoner sought transfer because of "imminent danger" from corrections officers

involved in earlier assault).  Indeed, courts cast a skeptical eye on prisoner retaliation claims as a general matter, as "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quotation marks and brackets omitted).

The balance of the equities and the public interest favor Defendants as well.  While Williams would receive no better healthcare, Defendants would be forced to transfer an inmate who is an escape risk to an unsuitable facility.  (ECF No. 72-1 ¶ 3).  Meanwhile, the public interest would suffer not only because of Williams' escape risk, but because an injunction would strip power from the state of Maryland to manage its own prison system.  A transfer would come at state taxpayer expense and would substantially weaken state institutions.  As the Fourth Circuit explained:

> Personal safety and security is embraced within the amorphous concept of public welfare.  The citizens of [a state], through their elected representatives, have selected prison administrators whose duty it is, at least indirectly, to protect the members of the community from potentially dangerous inmates.

*Wetzel v. Edwards*, 635 F.2d 283, 290 (4th Cir. 1980) (citations omitted).  In other words, state administrators - rather than federal courts - should generally be permitted to make the day-

25

to-day determination of which facilities provide the safest environments for inmates. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979) (explaining that the maintenance and operation of an institution are "considerations . . . peculiarly within the province and professional expertise of corrections officials").

Therefore, Williams' motion for a preliminary injunction will be denied.

## IV. Conclusion

For the reasons that follow, Defendants' motion for summary judgment will be granted in part and denied in part. Williams' motion for a preliminary injunction will be denied.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
